1  Scott Edward Cole, Esq. (S.B. #160744)
   Molly A. DeSario, Esq. (S.B. #230763)
2  Jessica L. Campbell, Esq. (S.B. #280626)
   **SCOTT COLE & ASSOCIATES, APC**
3  1970 Broadway, Ninth Floor
   Oakland, California 94612
4  Telephone:   (510) 891-9800
   Facsimile:   (510) 891-7030
5  Email:  scole@scalaw.com
   Email:  mdesario@scalaw.com
6  Email:  jcampbell@scalaw.com
   Web:    www.scalaw.com
7
   Lead Counsel and Attorneys
8  for Representative Plaintiffs
   and the Plaintiff Classes
9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12  IN RE WALGREEN CO.        )  **Case No. 11-cv-07664-PSG (FFMx)**
    WAGE AND HOUR            )
13  LITIGATION              )  **CLASS ACTION**
                           )  **PLAINTIFFS' NOTICE OF MOTION**
14                          )  **AND MOTION FOR PRELIMINARY**
                           )  **APPROVAL OF CLASS ACTION**
15                          )  **SETTLEMENT**
                           )
16                          )  **Date:   May 12, 2014**
                           )  **Time:  1:30 p.m.**
17  *Consolidated Cases:*    )  **Judge: Honorable Philip S. Gutierrez**

18  WILSON v. WALGREEN CO.   )  Case No. 11-cv-07664-PSG (FFMx)
                           )
19  HODACH v. WALGREEN CO.   )  Case No. 12-cv-07491-PSG (FFMx)
                           )
20  JEROMINSKI  v.  WALGREEN )  Case No. 12-cv-10134-PSG (FFMx)
    CO.                     )
21                          )
    BROWN v. WALGREEN CO.    )  Case No. 12-cv-08574-PSG (FFMx)
22                          )
    PETERSON   v.  WALGREEN  )  Case No. 13-cv-07290-PSG (FFMx)
23  CO.                     )
                           )
24  GINDI v. WALGREEN CO.    )  Case No. 13-cv-01154-PSG (FFMx)
                           )
25  HANNA v. WALGREEN CO.    )  Case No. 13-cv-02412-PSG (FFMx)
                           )
26  SHANINIAN  v.  WALGREEN  )  Case No. 13-cv-03576-PSG (FFMx)
    CO.                     )
27                          )
    MCDOWELL  v.  WALGREEN   )  Case No. 13-cv-01028-PSG (FFMx)
28  CO.                     )

*SCOTT COLE & ASSOCIATES, APC*
*ATTORNEYS AT LAW*
*THE TOWER BUILDING*
*1970 BROADWAY, NINTH FLOOR*
*OAKLAND, CA 94612*
*TEL. (510) 891-9800*

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on May 12, 2014 at 1:30 p.m., in Room 880 of the Edward R. Roybal Federal Building, located at 255 East Temple Street, Los Angeles, California, 90012, Representative Plaintiffs George Wilson, et al. ("Plaintiffs" or "Representative Plaintiffs"), Plaintiffs' Lead Counsel and Plaintiffs' Liaison Counsel, on behalf of themselves and parties in the Related Cases, will and hereby do move this Court for an Order: (1) granting preliminary approval of the parties' Class Action Settlement Agreement ("Settlement"); (2) granting conditional certification of the Settlement Classes; (3) appointing Class Counsel; (4) appointing Class Representatives; (5) appointing a Claims Administrator; and (6) approving the form of Class Notice.

This motion is made on the grounds that the Settlement is fair, adequate, and reasonable given the relative strengths and weaknesses of the claims and defenses; the risks, expense, complexity and likely duration of further litigation; the amount offered in settlement; the experience and views of counsel; and the public policy in favor of quieting litigation.

This motion is based upon the accompanying Memorandum of Points and Authorities and the Declaration of Molly A. DeSario, Esq., Declaration of Norm Blumenthal, Esq. and exhibits thereto and such other oral argument and documentary evidence as may be presented to the Court at the hearing of this motion.

Dated: March 25, 2013

**SCOTT COLE & ASSOCIATES, APC**

By: _Molly A. DeSario_
Molly A. DeSario, Esq.
Lead Counsel and Attorneys
for Representative Plaintiffs
and the Plaintiff Classes

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS..............................2

III.    SUMMARY OF SETTLEMENT TERMS...................................................4

IV.     CONDITIONAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE UNDER RULE 23 ...........................................7

    A.      A DISTRICT COURT MAY CERTIFY A CLASS IF IT MEETS THE REQUIREMENTS OF RULE 23(a) AND RULE 23(b)...............................7

    B.      THE SETTLEMENT CLASS MEETS ALL FOUR REQUIREMENTS OF RULE 23(a)..................................................................................8

        1.      The Settlement Class Satisfies the Numerosity Element ............................8

        2.      The Settlement Class Satisfies the Commonality Element......................8

        3.      The Settlement Class Satisfies the Typicality Element ............................10

        4.      Plaintiffs and Their Counsel Satisfy the Adequacy Element...................11

    C.      THE PROPOSED SETTLEMENT CLASS ALSO MEETS THE REQUIREMENTS OF RULE 23(b)(3)..................................................12

V.      PLAINTIFFS' LEAD AND LIAISON COUNSEL SHOULD BE APPOINTED AS "SETTLEMENT CLASS COUNSEL" ...............................................15

VI.     THE PROPOSED SETTLEMENT SHOULD BE GRANTED PRELIMINARY APPROVAL ...................................................................................16

    A.      THE RISKS, COMPLEXITY, EXPENSE AND LIKELY DURATION OF FURTHER LITIGATION SUPPORT APPROVAL...................................18

        1.      Plaintiffs' Counsel Diligently Analyzed the Value and Merits of this Case ...........................................................................................20

    B.      THE WORK PERFORMED BY COUNSEL RESULTED IN A SETTLEMENT THAT WILL PROVIDE REASONABLE COMPENSATION TO CLASS MEMBERS, REACHED THROUGH ARMS-LENGTH NEGOTIATIONS ...................................................22

VII.    THE PROPOSED CLASS NOTICE AND CLAIMS PROCESS SATISFY DUE PROCESS ...................................................................................23

    A.      THE CLASS NOTICE MATERIALS SATISFY DUE PROCESS AND MEET ALL OF THE ELEMENTS OF RULE 23(c)(2)(B) ...............................23

    B.      THE NOTICE PLAN AND CLAIMS PROCESS SATISFY DUE PROCESS BECAUSE THEY ARE CALCULATED TO GIVE ALL SETTLEMENT CLASS MEMBERS NOTICE ................................................25

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

VIII.   THE PARTIES REQUEST THAT THE COURT SET A FINAL SETTLEMENT
        APPROVAL SCHEDULE.................................................................................26

IX.     CONCLUSION.............................................................................................27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Memorandum of Points & Authorities in Support of Motion for Preliminary Approval of Class Action Settlement

# **TABLE OF AUTHORITIES**

**Cases**

*Abdullah v. U.S. Sec. Assocs.,*
  731 F.3d 952 (9th Cir. Cal. 2013) ................................................................. 10

*Alcantar v. Hobart Serv.,*
  2012 U.S. Dist. LEXIS 169110 (C.D. Cal. Nov. 28, 2012) ......................... 8

*Brinker Restaurant Corp. v. Superior Court,*
  53 Cal.4th 1004 (2012) ................................................................. 13, 15, 21

*Capitol People First v. State Dept. of Developmental Services,*
  155 Cal. App. 4th 676 (2007) ................................................................. 10

*Churchill Vill., L.L.C. v. GE,*
  361 F.3d 566 (9th Cir. 2004) ................................................................. 24

*Coalition for a Sustainable Delta v. McCamman,*
  2011 U.S. Dist. LEXIS 37306 (E.D. Cal. 2011) ......................................... 18

*Comcast Corp. v. Behrend,*
  133 S. Ct. 1426 (2013) ................................................................. 12

*County of Suffolk v. Long Island Lighting Co.,*
  907 F.2d 1295 (2d Cir. 1990) ................................................................. 3

*Day v. NLO,*
  851 F.Supp. 869 (S.D. Ohio 1994) ......................................................... 10

*Eisen v. Porsche Cars N. Am., Inc.,*
  2014 U.S. Dist. LEXIS 14301 (C.D. Cal. 2014) .............................. 17, 18, 20

*Evon v. Law Offices of Sidney Mickell,*
  688 F.3d 1015 (9th Cir. Cal. 2012) ......................................................... 10

*Faulkinbury v. Boyd & Associates, Inc.,*
  216 Cal. App. 4th 220 (2013) ................................................................. 14

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein,*
  30 Cal.4th 1037, 1054 (2003) ................................................................. 19

*Franklin v. Kaypro Corp.,*
  884 F.2d 1222, 1229 (9th Cir. 1989) ..................................................... 19

*Gonzalez v. Preferred Freezer Servs. Lbf,*
  2013 U.S. Dist. LEXIS 109930 (C.D. Cal. July 29, 2013) ......................... 25

*Gould v. Rosetta Stone, Ltd.,*
  2013 U.S. Dist. LEXIS 138921 (N.D. Cal. 2013) ..................................... 18

*Grant v. Capital Mgmt. Servs., L.P.,*
  2013 U.S. Dist. LEXIS 174190 (S.D. Cal. 2013) ..................................... 16

*Greenwood v. Compucredit Corp.,*
  2010 U.S. Dist. LEXIS 3839  (N.D. Cal. Jan. 19, 2010) ............................. 8

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

*Gripenstraw v. Blazin' Wings, Inc.*,
    2013 U.S. Dist. LEXIS 179214 (E.D. Cal. 2013) ..................................... 8

*Hanlon v. Chrysler Corp.*,
    150 F. 3d 1011 (9th Cir. 1998) ............................................................... 15

*In re HP Laser Printer Litig.*,
    2011 U.S. Dist. LEXIS 98759 (C.D. Cal. 2011) ................................... 18

*In re Ivan F. Boesky Sec.*,
    948 F.2d 1358 (2d Cir. N.Y. 1991) .......................................................... 4

*In re MRV Communs., Inc. Derivative Litig.*,
    2013 U.S. Dist. LEXIS 86295 (C.D. Cal. 2013) ................................... 18

*In re Netflix Privacy Litig.*,
    2013 U.S. Dist. LEXIS 37286 (N.D. Cal. 2013) ................................... 24

*In re Surebeam Corp. Secs. Litig.*,
    2003 U.S. Dist. LEXIS 25022 (S.D. Cal. 2003) ................................... 11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2013 U.S. Dist. LEXIS 123298 (C.D. Cal. 2013) ................................. 20

*In re W. Union Money Transfer Litig.*,
    2004 U.S. Dist. LEXIS 29377 (E.D.N.Y. Oct. 18, 2004) ........................ 3

*Keshishzadeh v. Arthur J. Gallagher Serv. Co.*,
    2010 U.S. Dist. LEXIS 116380 (S.D. Cal. 2010) ................................. 17

*Krzesniak v. Cedant Corp.*,
    2007 U.S. Dist. LEXIS 95145 (N.D. Cal. Dec. 17, 2007) ..................... 25

*Kullar v. Foot Locker Retail, Inc.*,
    168 Cal.App.4th 116 (2008) .................................................................. 19

*Lane v. Facebook, Inc.*,
    2010 U.S. Dist. LEXIS 24762 (N.D. Cal. 2010) ................................... 18

*Lazarin v. Pro Unlimited, Inc.*,
    2013 U.S. Dist. LEXIS 97213 (N.D. Cal. 2013) ................................... 15

*Leyva v. Medline Indus.*,
    716 F.3d 510 (9th Cir. 2013) ................................................................. 12

*Lou v. Ma Labs., Inc.*,
    2014 U.S. Dist. LEXIS 2665 (N.D. Cal. Jan. 8, 2014) ......................... 11

*Maywalt v. Parker & Parsley Pet. Co.*,
    864 F. Supp. 1422 (S.D. N.Y. 1994) ........................................................ 3

*Morey v. Louis Vuitton N. Am., Inc.*,
    2014 U.S. Dist. LEXIS 3331 (S.D. Cal. 2014) ..................................... 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 17

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

*Pierce v. Novastar Mortg., Inc.*,
  2007 U.S. Dist. LEXIS 46848 (W.D. Wash. June 27, 2007)........................ 3

*Rai v. CVS Caremark Corp.*,
  2013 U.S. Dist. LEXIS 177730 (C.D. Cal. Oct. 11, 2013) .......................... 9

*Rainbow Bus. Solutions v. Merch. Servs*,
  2013 U.S. Dist. LEXIS 179288 (N.D. Cal. 2013) .................................... 9

*Rannis v. Recchia*,
  380 Fed. Appx. 646 (9th Cir. 2010).................................................. 25

*Raychem Corp. v. Fed. Ins. Co.*,
  853 F. Supp. 1170 (N.D. Cal. 1994) ................................................ 19

*Reed v. 1-800 Contacts, Inc.*,
  2014 U.S. Dist. LEXIS 255 (S.D. Cal. 2014). .................................. 17, 18

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ......................................................... 3

*Reed v. United Teachers Los Angeles*,
  208 Cal. App. 4th 322 (2012) ...................................................... 17

*Roberts v. Heim*,
  130 F.R.D. 416 (N.D. Cal. 1988)..................................................... 25

*Ross v.Trex Co.*,
  2009 U.S. Dist. LEXIS 69633 (N.D. Cal. 2009) .................................... 17

*Schulz v. Qualxserv, LLC*,
  2012 U.S. Dist. LEXIS 58561 (S.D. Cal. Apr. 26, 2012) .......................... 13

*Seymore v. Metson Marine, Inc.*,
  194 Cal. App. 4th 361 (2011) ...................................................... 14

*Smith v. Microsoft Corp.*,
  2014 U.S. Dist. LEXIS 12799  (S.D. Cal. 2014) .................................. 15

*Stuart v. Radioshack Corp.*,
  641 F. Supp. 2d 901 (N.D. Cal. 2009) .............................................. 15

*Teledyne Mid-America Corp. v. HOH Corp.*,
  486 F.2d 987 (9th Cir. 1973) ...................................................... 17

*Tibble v. Edison Int'l*,
  711 F.3d 1061 (9th Cir. Cal. 2013) ................................................ 10

*Tierno v. Rite Aid Corp.*,
  2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) ......................... 10

*Turcios v. Carma Labs., Inc.*,
  2014 U.S. Dist. LEXIS 12938 (C.D. Cal. 2014)..................................... 8

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConcocPhillips Co.*,
  593 F.3d 802 (9th Cir. 2010) ...................................................... 14

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

*Van Ba Ma v. Covidien Holding, Inc.,*
    2014 U.S. Dist. LEXIS 13296 (C.D. Cal. 2014).................................................... 8

*Vasquez v. Coast Valley Roofing, Inc.,*
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ............................................................ 26

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)..................................................................................... 10

*Wietzke v. Costar Realty Info., Inc.,*
    2011 U.S. Dist. LEXIS 20605 (S.D. Cal. 2011) ................................................ 18

*Willson v. New York Life Ins. Co.,*
    1995 N.Y. Misc. LEXIS 652 (N.Y. Sup. Ct. Nov. 8, 1995) .................................... 3

**Statutes**

Federal Rules of Civil Procedure Rule 23 .................................................................. passim

**Other Authorities**

4 Newberg § 11:25 ........................................................................................................ 17

4 Newberg § 11:26 ........................................................................................................ 17

4 Newberg § 11:41 .................................................................................................. 17, 20

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

By and through the instant motion, Representative Plaintiffs George Wilson, et al. ("Plaintiffs" or "Representative Plaintiffs"), Plaintiffs' Lead Counsel and Plaintiffs' Liaison Counsel, on behalf of themselves and parties in the Related Cases, hereby respectfully request that this Court enter an Order:

1.   Granting preliminary approval of the class action settlement agreement ("Settlement");[1]

2.   Granting conditional certification of the Settlement Classes (collectively referred to herein as "the Class");[2]

3.   Appointing Scott Cole & Associates, APC (SCA) and Blumenthal, Nordrehaug, & Bhowmik (BMB) as settlement Class Counsel;

4.   Appointing Representative Plaintiffs as Class Representatives;

5.   Appointing CPT Group, Inc. as Claims Administrator; and

6.   Approving the Class Notice, Claim Form, and proposed timeline for administration.

This motion is based upon the accompanying Memorandum of Points and Authorities and the Declaration of Molly A. DeSario, Esq. and exhibits thereto and such other oral argument and documentary evidence as may be presented to the Court at the hearing of this motion.

The proposed Settlement will put to rest the litigation of <u>nine</u> consolidated putative wage and hour class actions on behalf of various categories of Walgreen Co.'s ("Defendant" or "Walgreen") California workers. The Settlement commits Walgreen to pay up to $23 million to settle these actions. This is an *excellent* result

---

[1]   A true and correct copy of the fully-executed "Joint Stipulation of Settlement and Release," is attached to the Declaration of Molly A. DeSario, Esq. in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("DeSario Decl."), filed concurrently herewith, and marked as Exhibit "A." Unless otherwise noted, all exhibits cited herein are attached to the DeSario Decl.

[2]   Exhibit "A," Settlement ¶¶ 5-8.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

for the Class Members and will obviate years of litigation and likely appeals. As discussed in detail below, the proposed Settlement is fair, adequate, and falls well within the range of reasonableness for preliminary approval.

## II.     PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

Plaintiffs Wilson and Martin filed the first of these consolidated actions on May 13, 2011 in San Francisco County Superior Court, Case No. CGC-11-510950. On June 14, 2011, Walgreen removed the case to the United States District Court for the Northern District of California asserting original jurisdiction under 28 U.S.C. §§ 1332(d)(2) (the Class Action Fairness Act of 2005) and removal jurisdiction under   28 U.S.C. §§ 1441(a) and 1446. Walgreen then moved to transfer the action to this Court, and that motion was granted on September 14, 2011. *Id.* at ¶ 3.

Since the filing of the *Wilson* action, eight additional actions bringing wage and hour claims on behalf of various classes of Walgreen's California workers were filed throughout California state and federal courts. *Id.* at ¶ 4. Ultimately, all related actions were consolidated by this Court and on July 2, 2013, the Court appointed SCA as Lead Counsel and BNB as Liaison Counsel. *Id.*

Rather than continuing to incur the extensive costs and uncertainty of litigating nine cases, the parties agreed to explore the prospect of settlement. On July 17, 2013, the parties attended a full-day mediation session – which lasted until approximately 11:00 p.m. – with well-known and respected mediator David Rotman. *Id.* at ¶ 5 The parties left that session unable to reach a deal, with Plaintiffs demanding additional information from Walgreen to independently evaluate the representations made during mediation. *Id.* at ¶ 6. During the course of the next few weeks, Walgreen produced a sizable amount of additional information and documents to Plaintiffs' counsel, which it carefully reviewed and analyzed before the parties returned for a second day of mediation with Mr. Rotman on August 19, 2013. *Id.* After another session of arms-length negotiations, which

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1  lasted until 2:00 a.m. the following morning, the parties reached an agreement in

2  principle to settle the claims in all nine pending actions for up to $23 million. *Id.*

3  Following some additional **seven months** of contentious, bilateral negotiations as

4  to the precise terms of settlement, the parties finally came to agreement on the

5  specific terms of long-form agreement. *Id.* at ¶ 7. By March 3, 2014, Lead and

6  Liaison Counsel, on the one hand, and Defendant and its attorneys on the other

7  hand, had executed the Settlement agreement. *Id.*

8      While Lead Counsel has full authority to sign the Settlement Agreement on

9  behalf of all Plaintiffs' counsel, and while it negotiated with Walgreen to include

10  signature lines therein for all Plaintiffs' counsel and their clients, the quickly-

11  approaching trial and pre-trial deadlines demanded and permit the filing of this

12  motion now. *Pierce v. Novastar Mortg., Inc.*, 2007 U.S. Dist. LEXIS 46848, *3-4

13  (W.D. Wash. June 27, 2007) (granting preliminary approval before receiving the

14  signatures of all class representatives); Federal Judicial Center, Manual for

15  Complex Litigation § 21.642 (4th ed.) ("a class representative cannot alone veto a

16  settlement, especially one that has been presented to and approved by the court");

17  *In re W. Union Money Transfer Litig.*, 2004 U.S. Dist. LEXIS 29377, 9-10

18  (E.D.N.Y. Oct. 18, 2004) (granting final approval and describing the court's order

19  preliminary approving the settlement without the signatures of two attorneys for

20  representative plaintiffs).[3]

21      Indeed, given the exceptional settlement provided, it is Lead Counsel's

22  expectation that, prior to the hearing thereon, the signatures already received from

23  several attorneys and their clients in the related cases will be joined by signatures

24  of remaining counsel and clients and submitted to the Court. Notably, however,

25

26  ───────────────
      [3] *See also, Reed v. Gen. Motors Corp.*, 703 F.2d 170, 174 (5th Cir. 1983);
27  *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999); *County of Suffolk v.
      Long Island Lighting Co.*, 907 F.2d 1295, 1325 (2d Cir. 1990); *Maywalt v. Parker
28  & Parsley Pet. Co.*, 864 F. Supp. 1422, 1426-33 (S.D. N.Y. 1994), aff'd, 67 F.3d
      1072 (2d Cir. 1995); *Willson v. New York Life Ins. Co.*, 1995 N.Y. Misc. LEXIS
      652, *44, n.5 (N.Y. Sup. Ct. Nov. 8, 1995).

Memorandum of Points & Authorities in Support of Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1  even if that expectation does not come to fruition, it is hardly an encumbrance to
2  this Court granting preliminary approval for a host of reasons, including: (1) this
3  Court is only presently tasked with adjudicating the "range of reasonableness" of
4  the settlement, (2) Lead Counsel is empowered, by virtue of its position, to
5  negotiate and contract with Walgreen,[4] (3) the representative plaintiffs in every
6  related case are already members of the putative class which Lead Counsel was
7  charged to represent, and (4) any plaintiff that ultimately decides to opt out has
8  exactly the same right to do so as any other class member would, albeit at the
9  appropriate time (i.e., during the Notice Period). Accordingly, the Court can and
10 should preliminarily approve this Settlement.

11 **III.   SUMMARY OF SETTLEMENT TERMS**

12     Plaintiffs' counsel believes that the proposed Settlement is a great result for
13 the Class. In exchange for a narrowly tailored release, the Settlement commits
14 Walgreen to pay up to $23,000,000 ("Gross Settlement Amount")[5] to Qualified
15 Claimants who timely submit completed Consent to Join Settlement and Claim
16 Forms to the Claims Administrator. Exhibit "A," Settlement ¶ 27. The "Net
17 Settlement Amount" is the portion of the Gross Settlement Amount available for
18 distribution to Qualified Claimants on a claims-made basis after the deduction of
19 Court-approved attorneys' fees and costs,[6] Service Enhancement Payments to the

20 ─────────────────
21 [4] As courts have recognized many times, one of the reasons Lead Counsel should be appointed in complex cases such as the instant matter is to allow for a streamlined settlement approval process. *In re Ivan F. Boesky Sec.*, 948 F.2d 1358,
22 1366 (2d Cir. N.Y. 1991) ("We are most disinclined to cabin the authority of lead counsel by requiring the explicit agreement of every lawyer for a named plaintiff or subclass to the proposed settlement.").
23 [5] *See* Exhibit "A," Settlement ¶ 21.
24 [6] The Settlement permits Plaintiffs to request an award of attorneys' fees of up to $6,440,000 (28% of the Gross Settlement Amount) as well as litigation costs (Defendant will not oppose a request of up to $75,000). If the Court awards less
25 than these amounts, the residual will be added to the Net Settlement Amount. Exhibit "A," Settlement ¶ 42. Through March 13, 2014, Lead and Liasion Counsel
26 have collectively expended over 5,247 hours on this litigation for a total combined lodestar of $2,073,684.25. Exhibit "C" SCA's Lodestar; Exhibit "GG," Declaration
27 of Norman Blumenthal ("Blumenthal Decl.") at Exhibit 2. Additionally, as of March 13, 2014, Lead and Liasion Counsel have collectively advanced $69,322.33
28 in unreimbursed litigation costs. Exhibit "D," SCA's Cost Journal; Exhibit "GG,"

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1   Class Representatives, claims administration expenses, a payment to the Labor and

2   Workforce Development Agency ("LWDA") of $22,500 (i.e., 75% of $30,000) for

3   the release of Labor Code Private Attorneys General Act ("PAGA") claims, and all

4   legally required withholding and employer taxes on the settlement payments. *Id.* at

5   ¶ 24. The Settlement also establishes a $1.5 million fund to pay claims under

6   California Labor Code section 2802 which will be deducted from the Net

7   Settlement Amount ("Labor Code § 2802 Fund"). *Id.* at ¶¶ 22, 24. Defendant will

8   pay at least 50% of the Net Settlement Amount less the Labor Code § 2802 Fund.

9   In the event that Class Members do not claim a minimum of 50% of the Net

10  Settlement Amount (less the Labor Code § 2802 Fund, the difference between the

11  claimed amount and 50% of the Net Settlement Amount shall be distributed on a

12  pro rata basis to the Class Members who submitted claims in accordance with the

13  allocation formula described in the following paragraph. Any funds that are not

14  claimed beyond the 50% floor shall remain the property of Defendant. *Id.* at ¶ 24.

15  Pro rata settlement payments to Qualified Claimants will be calculated based

16  on each Qualified Claimant's Compensable Work Weeks and Covered Positions.

17  *Id.* at ¶ 62. The Net Settlement Amount, less the Labor Code § 2802 Fund, shall be

18  allocated among Class 1 Covered Positions and their respective number of

19  Compensable Work Weeks as follows: Pharmacist positions = 32%;

20  MGT/HEXA/ASM/SFL positions = 23%; Pharmacy Staff positions = 16%; all

21  other non-exempt staff positions = 29%. *Id.* at ¶¶ 7, 62. Class 2 has been

22  established for purposes of distribution of the $1.5 million Labor Code § 2802

23  Fund, and includes all individuals who are, have been, or will be employed by

24  Defendant during the Class Period in a Class 2 Covered Position. *Id.* at ¶ 8.

25

26  _____

27  Blumenthal Decl. at Exhibit 2. Were the requested amount of attorneys' fees to be
    awarded, it would amount to a multiplier of merely 3.1 on Lead and Liaison
28  Counsel's combined lodestar. These figures do not include work performed by the
    other firms comprising Plaintiffs' Counsel. *See* Exhibits "HH," through "II."

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Class Members will have 30 days from the date the Claims Administrator mails the Settlement Documents to file claims, request exclusion, or object to the Settlement. Exhibit "A," Settlement ¶¶ 4, 50-52. Class Members' employment data will be based on Defendant's payroll and other business records. *Id.* at ¶ 58. Class Members who wish to challenge Defendant's records must submit a challenge in writing to the Claims Administrator and will bear the burden of proof (i.e., a Class Member who fails to provide written proof will have his or her challenge denied). All such challenges must be received within the Claims Period in which Class Members must submit claims. Defendant will then have 10 business days to investigate the challenge and determine whether any additional amount is owed to the Class Member making the challenge. In no case will a challenge to employment data result in a payment by Defendant in excess of the Gross Settlement Amount. *Id.* at ¶ 60.

The amounts to be paid to Qualified Claimants for all released claims, except for payments made to Qualified Claimants from the Labor Code § 2802 Fund, shall be allocated for tax purposes as follows: one-third civil penalties, one-third interest, and one-third wages (subject to withholding by Defendant). Class Representatives and Qualified Claimants shall be exclusively liable for any and all non-employer tax liability. *Id.* at ¶ 45.

Settlement checks issued to Qualified Claimants shall remain negotiable for a period of 180 calendar days from the date of mailing. The funds associated with any checks not properly or timely negotiated shall escheat to the State of California, pursuant to law. Qualified Claimants who fail to negotiate their check(s) within the specified time limit shall, like all Settling Class Members, remain bound by the Settlement and its releases. *Id.* at ¶ 69.

Upon Final Approval, the Settlement Class will release Defendant from any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney's fees, damages, action or causes of action of whatever kind or

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

nature, whether known or unknown, contingent or accrued, that are alleged, related to or that reasonably could have arisen out of the same facts alleged in the operative Complaint in this action and each Related Case, including, but not limited, to all wage-hour and wage-hour related claims under federal and state law for unpaid wages, unpaid overtime, liquidated damages, meal and rest period violations, conversion of wages, seventh-consecutive day of work California Labor Code violations, record-keeping violations, "waiting-time" penalties, indemnity and reimbursement of business expenses, and all derivative claims and PAGA penalties, up to and including the earlier of the date of Final Approval or August 19, 2014, except that Store Managers will release only claims that were alleged or could have been alleged under Labor Code § 2802 for reimbursement of business of expenses, and claims derivative thereto, including claims under Labor Code § 2698, *et seq.*, and only Class Members who return a consent form will release FLSA claims. The Settlement is conditioned upon the release by all Settling Class Members of any claim under Labor Code § 2699, and upon covenants by all Settling Class Members that they will not participate in any proceeding seeking penalties under Labor Code § 2699. The release shall be effective from May 13, 2007 through the earlier of Final Approval or August 19, 2014. *Id.* at ¶ 46

## IV. CONDITIONAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE UNDER RULE 23

### A. A DISTRICT COURT MAY CERTIFY A CLASS IF IT MEETS THE REQUIREMENTS OF RULE 23(a) AND RULE 23(b)

Through this motion, Plaintiffs request that the Court make appropriate findings and conditionally certify the Settlement Classes[7] in this action for purposes of settlement only. To certify a class, a district court must find that the proposed class meets the requirements of both Rule 23(a) and Rule 23(b). *See Turcios v. Carma Labs., Inc.,* 2014 U.S. Dist. LEXIS 12938, *5 (C.D. Cal. 2014). As will be discussed below, based on Plaintiffs' allegations in the First Amended

---

[7] *See* Exhibit "A," Settlement ¶¶ 5-8.

Consolidated Complaint, the Settlement Class meets all four prerequisites of Rule 23(a) class certification – numerosity, commonality, typicality, and adequacy of representation – in addition to the requirements of Rule 23(b)(3) – predominance of common issues and superiority of the class action device.

### B.   THE SETTLEMENT CLASS MEETS ALL FOUR REQUIREMENTS OF RULE 23(a)

#### 1.   The Settlement Class Satisfies the Numerosity Element

Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all class members be impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Van Ba Ma v. Covidien Holding, Inc.,* 2014 U.S. Dist. LEXIS 13296, *3 (C.D. Cal. 2014). Plaintiffs need not show that the number is so large that it would be impossible to join every class member. *Gripenstraw v. Blazin' Wings, Inc.,* 2013 U.S. Dist. LEXIS 179214, *9 (E.D. Cal. 2013). Here, the Settlement Class is clearly large enough to make joinder impracticable, as Defendant has indicated that it consists of approximately 40,000 individuals. DeSario Decl. ¶ 6.

#### 2.   The Settlement Class Satisfies the Commonality Element

Under Federal Rules of Civil Procedure Rule 23(a)(2), Plaintiffs must show that there is a question of law or fact common to the Settlement Class. The requirements of Rule 23(a)(2) are easily met. *Alcantar v. Hobart Serv.,* 2012 U.S. Dist. LEXIS 169110, *6 (C.D. Cal. Nov. 28, 2012) (commonality requirement is construed liberally and existence of some common legal issues is sufficient); *Greenwood v. Compucredit Corp.,* 2010 U.S. Dist. LEXIS 3839, *9 (N.D. Cal. Jan. 19, 2010). As such, a plaintiff may satisfy the commonality requirement by demonstrating either a common legal issue with divergent factual predicates or a common nucleus of facts with divergent legal remedies. *See Turicos,* 2014 U.S. Dist. LEXIS 12938 at *16; *Rainbow Bus. Solutions v. Merch. Servs,* 2013 U.S. Dist. LEXIS 179288, *15 (N.D. Cal. 2013). Furthermore, the presence of merely one common issue of law or fact is sufficient. *Rai v. CVS Caremark Corp.,* 2013 U.S. Dist. LEXIS 177730, *17 (C.D. Cal. Oct. 11, 2013). Here, Plaintiffs allege

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

Defendant's uniform security inspection, inter-storing expense reimbursement, meal and rest break, and wage payment policies, among others give rise to the following common questions of law and fact:

1) Whether Walgreen violated California Labor Code sections 226.7 and/or 512 by failing to consistently provide duty-free meal and/or rest periods to its non-exempt retail employees;

2) Whether Walgreen violated California Labor Code sections 201-204 and 206 by failing to pay all wages due and owed during the pendency of employment and/or at the time of the termination of employment with Walgreen of Plaintiffs and/or Class Members;

3) Whether Walgreen violated applicable IWC Wage Order(s) and/or California Labor Code section 510 by failing to pay all (including overtime) compensation to its non-exempt retail employees who worked in excess of forty hours per week and/or eight hours per day;

4) Whether Walgreen violated applicable IWC Wage Order(s) and/or California Labor Code sections 510, 551, 552, 558 and/or 850-853 by failing to pay overtime and double time compensation to its non-exempt retail employees who worked seven consecutive days in a week and/or more than 12 days in two consecutive weeks;

5) Whether Walgreen violated California Labor Code section 1174 by failing to keep accurate records of Class Members' hours of work;

6) Whether Walgreen violated California Labor Code section 226 by failing to provide Class Members with semimonthly itemized statements including total hours worked and all applicable hourly rates in effect during the pay period;

7) Whether Walgreen violated California Labor Code sections 406, 2800, and/or 2802 by failing to reimburse Class Members for necessary business expenses;

8) Whether Walgreen violated Business and Professions Code sections 17200, *et seq.* by engaging in unfair, unlawful and/or fraudulent business practices;

9) Whether the Representative Plaintiffs and Class Members are entitled to penalties under the Private Attorneys General Act of 2004, California Labor Code section 2698 *et seq.*; and

10) Whether Walgreen failed to provide proper compensation to Plaintiffs and Class Members as required under the FLSA.

These common issues satisfy Rule 23(a)(2)'s requirements. *See Turicos,* 2014 U.S. Dist. LEXIS 12938 at *16; *Rainbow,* 2013 U.S. Dist. LEXIS 179288, *15 (N.D. Cal. 2013) (shared legal issues with divergent factual predicates sufficient for class certification); *Tierno v. Rite Aid Corp.,* 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) (certifying a class of retail store managers with

common wage and hour claims); *Abdullah v. U.S. Sec. Assocs.,* 731 F.3d 952, 957-58 (9th Cir. 2013) (finding commonality satisfied where plaintiff security guard presented common question of whether "nature of work" exception to meal period requirements applied to single guard sites).

### 3. The Settlement Class Satisfies the Typicality Element

The permissive standard of typicality focuses on similarity between the legal theories of the proposed class representatives and the legal theories of those class members they seek to represent. *See Tibble v. Edison Int'l,* 711 F.3d 1061, 1074 (9th Cir. 2013); *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1030 (9th Cir. 2012).[8] In deciding whether individual variations preclude typicality, the focus should be on the behavior of the defendants. *Day v. NLO,* 851 F.Supp. 869, 884 (S.D. Ohio 1994); *see Capitol People First v. State Dept. of Developmental Services,* 155 Cal. App. 4th 676, 692-93 (2007). Typicality is met here as the claims of the Settlement Class are based on the same legal and factual claims as those of Plaintiffs. For instance, Plaintiffs who worked as MGTs and Pharmacists allege they, and all Class Members in those positions, were required to execute on-duty meal period agreements as a condition of employment.[9] Additionally, Plaintiffs allege that Plaintiffs' and the Class Members' bag check claims are all based on Walgreen's common, company-wide bag check policy.[10]

---

[8] The typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily will support a finding of typicality. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 n.5 (2011); *In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.,* 2013 U.S. Dist. LEXIS 155091 (C.D. Cal. 2013).

[9] Exhibit "J," Agreement for On-Duty Meal Period, Paper; Exhibit "F," Agreement for On-Duty Meal Periods, Online; *see also* Exhibit "G," Archived Schedules Reflecting On-Duty Meal Periods; Exhibit " ▉▉▉▉ for Tanarica Martin and George Wilson; ▉▉▉▉ Exhibit "J," Agreement to Waive Second M ▉▉▉ er 4, 2002 DLSE Opinion Letter; Exhibit "L," Deposition of Tanarica Martin at 212:10-213:24; Exhibit "M," Post Motion to Compel Supplemental Responses to Representative Plaintiff George Wilson's Special Interrogatories (Set One) 6:6-8; Exhibit "N," Deposition of Michelle Ro ▉▉

[10] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Memorandum of Points & Authorities in Support of Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

**4.      Plaintiffs and Their Counsel Satisfy the Adequacy Element**

The proposed Class Representatives and their counsel have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two prongs, the first being "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.,* 2003 U.S. Dist. LEXIS 25022, *16 (S.D. Cal. 2003). In this case, there is no reason to doubt the adequacy of Plaintiffs' counsel.[11] SCA was already appointed lead counsel of these consolidated actions, with the Court finding it "best able to represent the interests of the class." *Dkt. No.* 118, pp. 13-16. Furthermore, in appointing SCA lead counsel, the Court noted that both SCA and liaison counsel, BNB, had already completed the written discovery needed for Plaintiffs' class certification motion and had devoted such resources to the class claims to evidence the firms' "commitment to the class and [to] show that the firms will continue to devote significant resources in the prosecution of the claims." *Dkt. No.* 118, p. 16.

The second prong of the adequacy test is "that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *In re Surebeam Corp. Secs. Litig.,* 2003 U.S. Dist. LEXIS 25022, *16 (S.D. Cal. 2003); *and see Lou v. Ma Labs., Inc.,* 2014 U.S. Dist. LEXIS 2665, *5 (N.D. Cal. Jan. 8, 2014). Here, there is no evidence of antagonism between Plaintiffs' interests and those of the Settlement Class. Plaintiffs have litigated this case in good faith and the interests of Plaintiffs are aligned with those of the members of the Settlement Class as they both share a common interest in challenging the legality of Walgreen's policies and procedures. Moreover, there is no evidence of any

---

Rodriguez Depo. at 122 ███████████████████████████████████████████ b
████████████████████████████████████ onal Resume of Scott Cole & Associates; Exhibit "GG," Blumenthal Decl.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1  collusion between the parties. Plaintiffs' counsel convinced Walgreen to pay up to

2  $23 million to settle the claims herein, which is no cheap deal, and counsel was

3  only able to negotiate this sum after reviewing thousands of pages of documentary

4  evidence, two marathon mediation sessions, and months of further heated

5  negotiations to finalize the agreement. DeSario Decl. ¶¶ 34-39.

6  For these same reasons—that Plaintiffs will fairly and adequately protect the

7  class' interests, that they have no antagonistic interests to the class, and that they

8  have litigated this case in good faith—they should be appointed as Class

9  Representatives. Moreover, at the Final Approval Hearing, Class Counsel will

10  request Service Enhancement Payments to compensate Plaintiffs for their efforts in

11  prosecuting this matter, and for the risks and stigma they face – and will continue

12  to face – for doing so. Exhibit "FF," Declarations of Class Representatives.

13  **C.**    **THE PROPOSED SETTLEMENT CLASS ALSO MEETS THE**

14  **REQUIREMENTS OF RULE 23(b)(3)**

15  In addition to the Rule 23(a) requirements, a district court must also find that

16  common issues of law or fact "predominate over any questions affecting only

17  individual members." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class in

18  this case is sufficiently cohesive to warrant adjudication by representation. *See*

19  *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1436 (2013). Furthermore, because

20  the "predominance" factor concerns liability, any variation in damages is plainly

21  insufficient to defeat class certification. *Leyva v. Medline Indus.,* 716 F.3d 510,

22  514 (9th Cir. 2013). Plaintiffs contend all claims in this litigation are based on

23  Walgreen's common, class-wide policies and procedures, and that liability could

24  accordingly be determined on a class-wide basis, without dependence on individual

25  assessments of liability. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th

26  1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a

27  group of employees is in violation of the wage and hour laws are of the sort

28  routinely, and properly, found suitable for class treatment."). As Plaintiffs'

Consolidated Complaint reveals, Walgreen's alleged liability in these actions stems from four primary claims, which all arise out of the company's uniform policies and procedures: (1) off-the-clock claims; (2) meal and rest break claims; (3) overtime claims; and (4) expense reimbursement claims.

Plaintiffs allege Class Members' off-the-clock claims stem from several of Walgreen's common policies. First, Plaintiffs contend Walgreen enforces a uniform policy of requiring Class Members to undergo bag checks.[12] They also argue that Walgreen requires Class Members to travel for company meetings, bank runs, and inter-store transfers without reimbursement for mileage or compensation for their time based on Class Member testimony.[13] Indeed, Class Members report that they were required to perform these duties during shifts, before and after shifts, and during breaks, without pay.[14] Such claims are appropriate for class treatment where "[t]he application of the 'control rule' is a common question that can be answered on a classwide basis." *Schulz v. Qualxserv, LLC,* 2012 U.S. Dist. LEXIS 58561, *20-21 (S.D. Cal. Apr. 26, 2012). Additionally, Plaintiffs argue that Walgreen requires Pharmacists to perform opening and closing duties without compensation:

███████████████████████████

████████████████████████████████████

███████████████████████[15]

Plaintiffs allege Class Members' meal and rest break claims arise out of their contention that Walgreen required Class Members in certain positions to execute

---

[12]   Exhibit "O," Employee Bag Checks. Walgreen produced nearly 2,000 pages of loss prevention "night audits," which SCA electronically cataloged and carefully analyzed. Plaintiffs argued their analysis demonstrated that Walgreen's bag check policy ████████████████ California stores. *See, e.g.,* ████████████████████████████
[13] ████████████ Exhibit "EE
███ibit "EE," Class Member De
[15]   *Compare* Exhibit "AA," Store Hours *with* █████████████

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800



on-duty meal period agreements *as a condition of employment*,[16] and, in part, its bag check policy (to the extent bag checks interfere with Class Members' meal and rest breaks).[17]

Plaintiffs allege Class Members' overtime claims also stem from Walgreen's common policies.

[18] Plaintiffs assert that this claim is appropriate for certification since it is the product of the company's own scheduling system. *See, e.g., Seymore v. Metson Marine, Inc.,* 194 Cal. App. 4th 361, 373 (2011).

Plaintiffs allege Class Members' expense reimbursement claims also arise out of Walgreen's common policy of requiring them to use their personal vehicles to conduct company business,[19] often without mileage reimbursement.

[20] *See Stuart v. Radioshack Corp.,* 641 F. Supp. 2d 901, 904-05 (N.D. Cal. 2009) (simply promulgating a policy does *not* satisfy the employer's obligation under Labor Code section 2802 when the employer "knew or had reason

---

[16] Exhibit "E," Agreement for On-Duty Meal Period, Paper; Exhibit "F," Agreement for On-Duty Meal Periods, Online; *and see, e.g., United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConcocPhillips Co.,* 593 F.3d 802, 808 (9th Cir. 2010) (reversing denial of certification as to plaintiffs' "on duty" theory.); *Faulkinbury v. Boyd & Associates, Inc.,* 216 Cal. App. 4th 220, 234 (2013) ("[B]y requiring blanket off-duty meal break waivers in advance . . . regardless of the working conditions at a particular station, [the employer] treated the off-duty meal break issue on a classwide basis.").

[17] Exhibit "CC," Deposition of Gordon Couffer ("Couffer Depo.") 106:4-12 (bag checks occur when employees leave store for meal and/or rest breaks); 115:8-116:6 (bag checks conducted at front of store); 116:18-117:23 (time clock is located near the manager's office.

[18] DeSario Decl. ¶¶ 17-23;

[19]                                    s of

Memorandum of Points & Authorities in Support of Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1   to know an expense was incurred."); *Brinker,* 53 Cal.4th at 1033 (question of

2   whether uniform policy is unlawful "is by its nature a common question eminently

3   suited for class treatment.").

4        The class action device proposed herein is "superior to other available

5   methods for the fair and efficient adjudication of the controversy." Fed. R. Civ.

6   P. 23(b)(3). Conditional certification of the Settlement Class will allow Class

7   Members' claims to be fairly, adequately, and efficiently resolved to a degree that

8   no other mechanism or forum would provide. As in *Hanlon,* the alternative

9   methods of resolution are individual claims for a relatively small amount of

10  damages. *Hanlon v. Chrysler Corp.,* 150 F. 3d 1011, 1019-20 (9th Cir. 1998); s*ee

11  Smith v. Microsoft Corp.,* 2014 U.S. Dist. LEXIS 12799, *9-10 (S.D. Cal. 2014).

12  These claims "'would prove uneconomic for potential plaintiffs' because 'litigation

13  costs would dwarf potential recovery.'" *Moore,* 2013 U.S. Dist. LEXIS 87782 at

14  *19 (citation omitted).

15       Finally, no issues of manageability would preclude certification of the

16  Settlement Class. A court faced with a request for a settlement-only class like this

17  one need not inquire whether the case would present intractable problems of trial

18  management, even though other requirements under Rule 23 must still be satisfied.

19  *See, e.g., Lazarin v. Pro Unlimited, Inc.,* 2013 U.S. Dist. LEXIS 97213, *15 (N.D.

20  Cal. 2013). In any event, as discussed below, the proposed plan of distribution and

21  settlement process are efficient and manageable.

22  **V.    PLAINTIFFS' LEAD AND LIAISON COUNSEL SHOULD BE**

23  **APPOINTED AS "SETTLEMENT CLASS COUNSEL"**

24       Federal Rule of Civil Procedure 23(g) requires that courts consider the

25  following four factors when appointing settlement class counsel: (1) whether

26  counsel has investigated the class claims; (2) whether counsel is experienced in

27  handling class actions and complex litigation; (3) whether counsel is

28  knowledgeable regarding the applicable law; and (4) whether counsel will commit

---

adequate resources to representing the class. *See Grant v. Capital Mgmt. Servs., L.P.,* 2013 U.S. Dist. LEXIS 174190, *10-11 (S.D. Cal. 2013). Defendant does not dispute that Plaintiffs' Counsel meets these requirements for purposes of the present Settlement (and, indeed, this Court already appointed SCA as Lead Counsel and BNB as Liaison Counsel for litigation purposes); however, even if such appointment was opposed, it is clear from the record presented herein that these Plaintiffs' Counsel should be appointed settlement Class Counsel.

There is no reason to doubt these two law firms' experience, knowledge or commitment. As revealed by the professional resumes submitted herewith, SCA and BMB attorneys are highly experienced and knowledgeable regarding complex federal and state wage and hour class actions like this one. Exhibit "B," Scott Cole & Associates Professional Resume; Exhibit "C," Blumenthal Decl. Indeed, Plaintiffs' Counsel has handled many scores of wage and hour cases on behalf of retail store employees and successfully obtained certification of classes alleging claims just like those raised in this lawsuit. Moreover, SCA was already appointed settlement class counsel in an action against Walgreens on similar issues in connection with prior class litigation. In sum, these class action firms have fully committed their resources to representing the class in this case, have the skill and expertise to do it properly, and will continue to do so whether or not the Settlement is approved. Accordingly, appointment of SCA and BNB as settlement Class Counsel is appropriate.

## VI.    THE PROPOSED SETTLEMENT SHOULD BE GRANTED PRELIMINARY APPROVAL

Rule 23(e) requires that the court find a class settlement to be fair, reasonable and adequate before entering preliminary or final approval. The primary concern of Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations. *Reed v. 1-800 Contacts, Inc.,* 2014 U.S. Dist. LEXIS 255, *12 (S.D. Cal. 2014). Moreover,

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1  the law favors settlement, particularly in class actions and other complex cases,
2  where substantial resources can be conserved by avoiding the time, cost and rigors
3  of formal litigation. 4 Newberg § 11:41; *see also Eisen v. Porsche Cars N. Am.,*
4  *Inc.,* 2014 U.S. Dist. LEXIS 14301, *12 (C.D. Cal. 2014); *Nat'l Rural Telecomms.*
5  *Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004); *Teledyne Mid-*
6  *America Corp. v. HOH Corp.,* 486 F.2d 987, 994 (9th Cir. 1973). These concerns
7  apply with particular force in a case such as this, where an allegedly illegal practice
8  affected over 40,000 of Defendant's current and former employees.

9      At this point in time, the Court need only determine whether the proposed
10  settlement is within the range of possible approval, and thus whether notice to the
11  class of its terms and conditions and the scheduling of a formal fairness hearing is
12  worthwhile. *Keshishzadeh v. Arthur J. Gallagher Serv. Co.,* 2010 U.S. Dist.
13  LEXIS 116380, *4-5 (S.D. Cal. 2010) *see also* 4 Newberg § 11:25. The Court is
14  granted broad powers to determine whether a proposed settlement is fair under the
15  circumstances of the case (*Reed v. United Teachers Los Angeles,* 208 Cal. App. 4th
16  322, 336 (2012)) yet need find only that the settlement falls within the range of
17  possible final approval, also described as "the range of reasonableness." *See, e.g.,*
18  *Ross v.Trex Co.,* 2009 U.S. Dist. LEXIS 69633, *9 (N.D. Cal. 2009); 4 Newberg
19  § 11:26.

20      Courts balance several factors in determining whether a settlement is fair,
21  adequate and reasonable, in compliance with Rule 23(a), such as the strength of the
22  plaintiff's case, the risk, expense, complexity and likely duration of further
23  litigation, the risk of maintaining a class action through trial, the amount offered in
24  settlement, the extent of discovery completed, the stage of the proceedings, and the
25  experience and views of counsel. *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at
26  525; *Wietzke v. Costar Realty Info., Inc.,* 2011 U.S. Dist. LEXIS 20605, *9-10
27  (S.D. Cal. 2011). While making this fairness determination, courts need also give
28  proper deference to the private consensual agreement negotiated between the

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

parties, since the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Coalition for a Sustainable Delta v. McCamman,* 2011 U.S. Dist. LEXIS 37306, *11 (E.D. Cal. 2011). Indeed, as a "[s]ettlement is the offspring of compromise," the question upon preliminary approval "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *In re HP Laser Printer Litig.,* 2011 U.S. Dist. LEXIS 98759, *10 (C.D. Cal. 2011). Accordingly, a court should not second-guess the parties, or substitute its judgment for that of the proponents of the settlement, particularly when experienced counsel familiar with the litigation have reached settlement. *See Gould v. Rosetta Stone, Ltd.,* 2013 U.S. Dist. LEXIS 138921, *8 (N.D. Cal. 2013); *Eisen,* 2014 U.S. Dist. LEXIS 14301 at *14. Here, as shown below, the proposed Settlement falls well within the range of reasonableness.

A.   **THE RISKS, COMPLEXITY, EXPENSE AND LIKELY DURATION OF FURTHER LITIGATION SUPPORT APPROVAL**

Yet another factor considered by courts in approving a settlement is the complexity, expense and likely duration of the litigation. *1-800 Contacts, Inc.,* 2014 U.S. Dist. LEXIS 255 at *6; *Morey v. Louis Vuitton N. Am., Inc.,* 2014 U.S. Dist. LEXIS 3331, *13 (S.D. Cal. 2014); *In re MRV Communs., Inc. Derivative Litig.,* 2013 U.S. Dist. LEXIS 86295, *8 (C.D. Cal. 2013). In applying this factor, the Court should weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc.,* 2010 U.S. Dist. LEXIS 24762, *19 (N.D. Cal. 2010); *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (2008) (The trial court "bears the responsibility to ensure that the recovery represents a reasonable compromise,

given the magnitude and apparent merit of the claims being released, **discounted by the risks and expenses** of attempting to establish and collect on those claims by pursuing the litigation.") (Emphasis added).

The policy under California law that favors and encourages settlement of class actions and other complex cases applies with particular force here. California jurists recognize "an overriding public policy favoring settlement of class actions." *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal.4th 1037, 1054 (2003) (Kennard, J., concurring) (*citing Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("public policy favor[s] the compromise and settlement of disputes")); *see also Raychem Corp. v. Fed. Ins. Co.,* 853 F. Supp. 1170, 1177 (N.D. Cal. 1994) (recognizing public policy favoring settlement of class action lawsuits). Employment cases (including wage and hour cases) can be expensive and time-consuming to prosecute. That this is a class action further amplifies the economies of time, effort and expense achieved by this Settlement.

The alternative to a class action – i.e., individual litigation – would tax private and judicial resources over a period of years and, given the relatively modest amount of damages each Class Member allegedly incurred, would be uneconomical even for those with the finances, sophistication and tenacity to secure individual legal representation. This Settlement, on the other hand, provides to *all* Class Members, regardless of their means, the opportunity for a monetary recovery in a prompt and efficient manner, without the risk of the Court denying class certification and the resultant recovery of nothing at all. Should the Court deny final settlement approval, most Class Members will, as a practical matter, be left without any remedy at all and, should any claimant elect to pursue his or her claim anyway, any one or more courts throughout California may be called upon to address the issues presented here in a piecemeal, costly and time-consuming manner. As such, the Settlement in this case is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

action suits." *Eisen,* 2014 U.S. Dist. LEXIS 14301 at *10; *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. 2013); 4 *Newberg* § 11.41 at 87-89.

### 1. Plaintiffs' Counsel Analyzed the Value and Merits of the Class Claims

Based on discussions with the named plaintiffs, interviews of numerous Class Members, and the review of extensive documentary evidence produced by Walgreen both formally and informally in the course of litigation and settlement negotiations, Plaintiffs' Counsel assessed the potential value of the class claims being released by the proposed Settlement by performing complex calculations on this data. For example, Plaintiffs' counsel calculated that the class' unreimbursed mileage claim alone, which includes mileage incurred on class members' personal vehicles for inter-store transfers and bank deposit runs, has a maximum value of approximately $23 million. The class' meal period claims are worth significantly more (assuming the "best possible case scenario" for Plaintiffs), as are the unpaid wage claims (nearly a hundred million). DeSario Decl. ¶¶ 8-31.[21]

Class Counsel weighed the total possible Class recovery reflected above against many risk factors, including:

- The great discretion afforded to trial courts in electing to grant or deny class certification, meaning it is entirely possible that this Court would deny certification of the proposed classes, resulting in <u>no recovery</u> whatsoever for the unnamed Class Members;

- Defendant's likely argument that there are no common issues, based on the wide variation in Walgreen's store size, number of employees, sales volume, geographic area, customer demographics, services offered (e.g., one hour photo development, drive-thru pharmacy, 24-hour store operating hours);

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

21

- Defendant's likely arguments that the named plaintiffs' claims are not typical of those of the Class and that they are inadequate class representatives, which Plaintiffs expect would be based on the testimony of their supervisors and/or coworkers;

- Defendant's likely argument that the Class's expense reimbursement claims raise individualized issues, citing lack of documentation and variances in mileage expenses;

- The possibility this Court might find that California Labor Code section 203 requires a "willful" failure to pay wages and the difficulties Plaintiffs faced in establishing a common policy of paying wages after they are due;

- The relative lack of written evidence for the Class Members' missed rest periods, other than their declarations;

- Even if the Court certified the class, the possibility that it would agree with Defendant's likely argument that employers need only make breaks available and that Defendant had no obligation to ensure that breaks were actually taken. *See Brinker,* 53 Cal.4th 1004;

- Defendant's likely argument that, even if found liable for unpaid wages, meal period violations and/or failure to pay overtime compensation, the Class lacked sufficient evidence to legally establish their damages;

- Defendant's likely argument that the unpaid wage claims arising out of security checks are subject to the affirmative defense that the time is *de minimus* as a matter of law and, accordingly, Defendant should not be held liable which, if successful, would result in no recovery on this claim;

- Defendant's likely argument that Plaintiffs' estimate of the maximum damages available to the Class is vastly overstated and does not comport with the *actual* damages suffered by Class Members;

- Defendant's likely argument that Plaintiffs could not show that there was an "injury" entitling the Class to recovery under California Labor Code section 226; and

- The possibility that, as in any litigation, the Class could proceed all the way to trial and be victorious in this case and still find themselves unable to actually enforce their ultimate judgment owing to Defendant's ultimate insolvency or other unforeseen intervening circumstances.

DeSario Decl. ¶ 35.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Although the amount of the Class' maximum potential damages is substantial, the legitimate and serious risks above compelled a deep discount for settlement—an evaluation Class Counsel was very judicious in making. The prospect of the payment now of up to $23 million to Class Members, when weighed against the tremendous uncertainty of further litigation and the Class receiving nothing or being made to sit in limbo through years of appeals[22] made it *crystal clear* to that Class members are is far better served by the proposed Settlement than further and protracted litigation.

## B.   THE WORK PERFORMED BY COUNSEL RESULTED IN A SETTLEMENT THAT WILL PROVIDE REASONABLE COMPENSATION TO CLASS MEMBERS, REACHED THROUGH ARMS-LENGTH NEGOTIATIONS

Since the inception of these consolidated actions, the litigation has been driven by the first filed case, *Wilson*. Since its filing in 2011, Lead Counsel SCA has worked diligently to prosecute the class claims, engaging in significant discovery, leading depositions, representing the Class before this Court, conducting calls with the attorneys for the newly filed cases to keep them informed, and working with Defendant to coordinate the mediation sessions which ultimately yielded the instant Settlement. DeSario Decl. ¶ 35.

At the beginning of the litigation, SCA strategically amended its Complaint on two separate occasions, keeping the case alive despite Walgreen's motions to dismiss.[23] SCA also successfully opposed an *ex parte* application for a protective Order seeking to limit SCA's ability to communicate with the class.[24]

---

[22]   Consider, for example, the plight of the employee-class members in *Savaglio v. Wal-Mart Stores, Inc.*, Case No. C-835687 (Alameda County Super. Ct.). Following four years of litigation and a four month jury trial, a $172 million verdict was entered against Wal-Mart in 2005 on behalf of over 116,000 class members. Those aggrieved employees, however, did not receive any remuneration until **2011** - more than five years after trial.
[23]   This Court rejected four of Walgreen's six stated grounds for dismissal. Only claims released by prior settlement and those for which Plaintiffs lacked standing to prosecute were dismissed. DeSario Decl. ¶ 36; *Dkt. No.* 74.
[24]   The *ex parte* application was denied on procedural grounds. DeSario Decl. ¶ 37; *Dkt. No.* 57, 59, and 63.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

Throughout the course of the litigation, SCA has propounded extensive written discovery including dozens of document requests and special interrogatories and held numerous meet and confer sessions with Walgreen to resolve disputes. *Id.* at ¶ 38. Through discovery, lengthy meet and confer sessions, supplemental discovery, motions to compel and motions to clarify orders compelling discovery, SCA obtained dozens of categories of documents revealing the company's policies and procedures as well as a significant portion of the class list. *Id.* In total, Walgreen has produced over 8,000 pages of documentary evidence to SCA. *Id.*

SCA also took calculated measures to prepare its motion for class certification. DeSario Decl. ¶ 39. SCA conducted an extensive telephone campaign, obtaining dozens of declarations and retainers from Class Members. *Id.* SCA also conducted in-person inspections of four Walgreen stores. *Id.* SCA deposed one of Walgreen's FRCP Rule 30(b)(6) witnesses and noticed the deposition of two additional witnesses to testify on other topics. *Id.* Finally, SCA defended the depositions of the two named plaintiffs in the *Wilson* action, who were both deposed for seven hours each. *Id.*

Following the August 2013 mediation at which the instant Settlement was reached, SCA led further negotiations as to the terms of the long-form agreement. *Id.* at ¶ 40. This required nearly an additional ***seven months*** of intense, bilateral negotiations with Walgreen's counsel. *Id.* In the end, SCA was able to secure what it believes are the best terms that could have been achieved for the Class. *Id.*

## VII.   THE PROPOSED CLASS NOTICE AND CLAIMS PROCESS SATISFY DUE PROCESS

### A.   THE CLASS NOTICE MATERIALS SATISFY DUE PROCESS AND MEET ALL OF THE ELEMENTS OF RULE 23(c)(2)(B)

Rule 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice should

1  describe: (1) the nature of the action; (2) the definition of the class certified; (3) the

2  class claims, issues, and/or defenses; (4) that a class member may enter an

3  appearance through counsel if the member so desires; (5) that the court will

4  exclude from the class any member who requests exclusion, stating when and how

5  members may elect to be excluded; and (6) the binding effect of a class judgment

6  on class members under Rule 23(c)(3). Fed. R. Civ. P. Rule 23(c)(2)(B). Courts

7  have approved class notices even when they have provided only general

8  information about a settlement. *In re Netflix Privacy Litig.,* 2013 U.S. Dist. LEXIS

9  37286, *27 (N.D. Cal. 2013) ("very general description of the proposed

10  settlement" satisfied standards); *Churchill Vill., L.L.C. v. GE,* 361 F.3d 566, 575

11  (9th Cir. 2004) (notice is satisfactory if "generally describes the terms of the

12  settlement").

13       The content of the both parties' proposed notice materials ("Settlement

14  Documents") herein fully comply with due process and FRCP Rule 23. The

15  Settlement Documents provide the definition of the Class, describe the nature of

16  the action, and explain the procedure for contesting data used to calculate

17  estimated Class Member payments under the Settlement. The Settlement

18  Documents provide specifics regarding the date, time, and place of the Final

19  Approval hearing, and inform Class Members of their options upon receiving the

20  notice (i.e., opt out, file a claim, object or do nothing). It explains that the

21  Settlement release will apply to their state law and non-FLSA federal claims unless

22  they timely opt out of the Settlement. The proposed notice also informs the Class

23  that the Settlement amount will be used to compensate Plaintiffs' Counsel for the

24  approved amount of costs and fees and the named plaintiffs' Service

25  Enhancements.

26       While both of the proposed sets of notice material contain all the

27  information required under FRCP Rule 23(c)(2)(B),the parties are unable to agree

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1   on the form of notice to be disseminated to the Class.[25] Walgreen would like the

2   Class Members to receive a pre-printed Exclusion Form while Plaintiffs' Counsel

3   is concerned that the inclusion of an additional form will unnecessarily confuse

4   Class Members and likely result in the submission of both Exclusion Forms and

5   Claim Forms. Plaintiffs' proposed notice materials contain instructions for Class

6   Members to follow when submitting their requests for exclusion such that only

7   those Class Members who truly wish to opt-out — and fully understand the effect

8   of doing so — will submit such requests. *See, e.g., Krzesniak v. Cedant Corp.*,

9   2007 U.S. Dist. LEXIS 95145, *9 (N.D. Cal. Dec. 17, 2007) (finding that a

10  separate exclusion form "will 'engender confusion' and may encourage class

11  members to 'unwittingly opt out of the class.'") (quoting *Roberts v. Heim,* 130

12  F.R.D. 416, 423 (N.D. Cal. 1988)). The parties submit this issue to the sound

13  discretion of the Court.

14  **B.     THE NOTICE PLAN AND CLAIMS PROCESS SATISFY DUE
           PROCESS BECAUSE THEY ARE CALCULATED TO GIVE
15         ALL SETTLEMENT CLASS MEMBERS NOTICE**

16          The Claims Administrator will use the United States Postal Service National

17  Change of Address List to verify the accuracy of all addresses before the initial

18  mailing date to ensure that the Settlement Documents are sent to all Class

19  Members at the addresses most likely to result in their immediate receipt. Such a

20  notice plan satisfies due process and Rule 23(c)(2)(B). With respect to returned

21  envelopes, the Claims Administrator will perform a routine skip-trace procedure to

22  obtain a current address and re-mail, by First Class U.S. Mail, the Settlement

23  Documents with a new Claims Period deadline within five business days of the

24  receipt of the returned envelope. *Id. See Rannis v. Recchia,* 380 Fed. Appx. 646,

25  650 (9th Cir. 2010) (finding due process was satisfied and class members whose

26  notices were returned as undeliverable were properly included in the class where

27  _____

28  [25]  *Compare,* Exhibit "A," Settlement, Exhibits 1-3, Walgreen's proposed
    notice materials, *with* Exhibit "A," Settlement, Exhibits 4-5, Plaintiffs' proposed
    notice materials.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

the administrator mailed notices to the last known address and demonstrated "reasonable effort" by performing skip-traces); *Gonzalez v. Preferred Freezer Servs. Lbf*, 2013 U.S. Dist. LEXIS 109930, *4-5 (C.D. Cal. July 29, 2013) (finding notice constitutes "best notice practicable under the circumstances" where administrator performed skip-trace on all mail returned as undeliverable). Defendant reserves the sole right to request that the Claims Administrator send a reminder notice to Class Members after the initial mailing.

Class Members who wish to challenge Defendant's records will have the opportunity to do so by submitting a challenge in writing to the Claims Administrator. Class Members will have 30 days from the date the Claims Administrator mails the Settlement Documents to file claims, request exclusion, or object to the Settlement. This is sufficient time to give Settlement Class members the opportunity to comment on the Settlement. *Vasquez v. Coast Valley Roofing, Inc.,* 670 F. Supp. 2d 1114, 1127 (E.D. Cal. 2009) (approving 30-day notice period for class members to object, request exclusion, or mail claims for settlement shares in wage and hour case).

## VIII. THE PARTIES REQUEST THAT THE COURT SET A FINAL SETTLEMENT APPROVAL SCHEDULE

Plaintiffs recommend the below schedule following the issuance of an Order preliminarily approving the proposed Settlement:

| Date/Triggering Event: | Event: |
|---|---|
| 30 days after Preliminary Approval: June 11, 2014 | Deadline for Defendant to provide Claims Administrator with a database of the Class Members' contact information. |
| 12 business days after database provided to Claims Administrator: June 27, 2014 | Deadline for Claims Administrator to mail Settlement Documents. |
| 30 days after Settlement Documents mailed: July 27, 2014 | Last day for Class Members to file claims, opt out or object to the Settlement. |
| 14 days prior to the expiration of the Claims Period: July 13, 2014 | Last Day for Class Counsel to file a Motion for Attorneys' Fees and Costs. |

## IX. CONCLUSION

As set forth above, the proposed Settlement is an excellent result for the Class herein. It is fair, adequate, well within the range of reasonableness, and the Class satisfies all of the elements of Rule 23 for conditional certification for settlement purposes. For these reasons, the Court should grant the instant motion and order Notice to be disseminated to the Class.

Dated: March 25, 2014

SCOTT COLE & ASSOCIATES, APC

By: _____
Molly A. DeSario, Esq.
Lead Counsel and Attorneys
for Representative Plaintiffs
and the Plaintiff Classes

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800